IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DELORIS BRISCO,              §

                    §

       Plaintiff,         §

                    §

v.                        §         CIVIL ACTION NO.

                    §         3:04-CV-0610-P

HOME STATE INSURANCE     §

GROUP, INC.,          §

                    §

Defendant.            §

## MEMORANDUM OPINION AND ORDER

Now before the Court are (1) Defendant's Motion for Summary Judgment, filed January 27, 2005; (2) Plaintiff's Objections to and Motion to Strike Certain Summary Judgment Evidence, filed March 1, 2005; and (3) Defendant's Objections and Motion to Strike Plaintiff's Summary Judgment Declarations, filed March 11, 2005. After careful consideration of the Parties' briefing and applicable law, the Court hereby GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment, DENIES as MOOT Plaintiff's Objections to and Motion to Strike Certain Summary Judgment Evidence, and GRANTS in PART and DENIES in PART Defendant's Objections and Motion to Strike Plaintiff's Summary Judgment Declarations.

## FACTS

This is an action brought by Plaintiff Deloris Brisco ("Brisco" or "Plaintiff") against her former employer, Home State Insurance Group, Inc. ("Home State" or "Defendant") for race-based discrimination and retaliation in violation of Section 1981 and the Texas Commission on Human Rights Act (42 U.S.C. § 1981 and Tex. Lab. Code Ann. § 21.051, *et seq.*). (First Am. Compl.

1

("Compl.") ¶¶ 8-11.)

Brisco is an African-American female who was employed by Home State as an insurance claims adjuster from August 14, 2000 until October 15, 2001.  Plaintiff was hired by the Manager of the Claims Department, Ms. Dalton Soster ("Soster").  Plaintiff believed she was being hired to fill a supervisory position for which she would be provided training and would be handling litigation files.  (Pl.'s App. at 1.)

According to Plaintiff, in November 2000, Plaintiff was not handling litigation files.  Rather, those files were being handled by a temporary white employee with no litigation experience.  (Pl.'s App. at 2.)  Plaintiff discussed with Soster that she wanted to handle litigation files, as promised when she was hired, and that "she had worked hard to achieve the status of litigation adjustor" and wished to maintain that status.  (Pl.'s App. at 2.)  When Plaintiff explained to Soster that there were very few African-American litigation adjusters in the field, Soster allegedly replied, "Are you saying I'm prejudiced?"  (Pl.'s App. at 2.)

On May 16, 2001, Defendant hired Cheryl Mitchell ("Mitchell"), a white female, for the position of Casualty Adjuster/Litigation Support.  (Pl.'s App. at 2.)  This position carried with it the responsibility of handling litigation claims and the opportunity to participate in mediation and settlement negotiations.  (Pl.'s App. at 2.)  According to Plaintiff, this position was superior to her position, which involved handling pre-trial claims.  Plaintiff contends that she was more qualified than Mitchell, that she had more experience with claims adjustment and more educational achievement, and that she had been with the company longer than Ms. Mitchell.  (Pl.'s App. at 2.)

Plaintiff also alleges that beginning in September 2000, she made repeated requests for an office key from Soster, so that Plaintiff could access the office if she was the first to arrive.  Soster

denied Plaintiff's request, but subsequently gave keys to two white employees with less seniority than Plaintiff.  (Pl.'s App. at 2-3.)

Soster also permitted those same employees to work flex hours.  In June 2001, Plaintiff asked her immediate supervisor, Mark Jackson ("Jackson"), why she was not permitted to work flex hours and commented that she thought Home State was an equal opportunity employer, but she did not believe she was being treated the same as her white counterparts.  (Pl.'s App. at 3.)  Jackson said he would have to check with Soster about the issue.  He later told Plaintiff that he asked Soster if Plaintiff could work flex time and he mentioned to her that Plaintiff believed she was not being treated the same as the white employees.  According to Jackson, Soster denied Plaintiff's request for flex time and appeared visibly upset about the accusation that Plaintiff was not being treated equally.  (Pl.'s App. at 6.)  However, Plaintiff's flex time request was approved shortly after her request was made.  (Def.'s App. at 23.)

According to Plaintiff, Soster's treatment of her changed after this incident.  Plaintiff alleges that Soster was short, unfriendly, and harsh in her tone with Plaintiff.  (Pl.'s App. at 3.)  Plaintiff alleges that Soster increased Plaintiff's workload, but would not allow her to seek assistance from other employees, including Yolanda Rivera-Tapia ("Rivera").  When Plaintiff's co-worker, Rivera, commented to Soster that Plaintiff appeared overwhelmed and asked if she could help Plaintiff, Soster allegedly replied "so she's overwhelmed?  Well, I don't feel sorry for that black bitch."  (Pl.'s App. at 9.)

On October 11, 2001, Plaintiff found a claims file on her desk with a default judgment inside dated July 24, 2001.  (Pl.'s App. at 3; Def.'s App. at 50.)  Plaintiff had not seen the default judgment document in the file prior to this date.  (Pl.'s App. at 3.)  According to company policy, any litigation

3

document including a default judgment, went directly to Soster.  Plaintiff took the file directly to Jackson, her supervisor, who immediately took the file to Soster.  (Pl.'s App. at 3.)  Jackson regularly reviewed Plaintiff's files (every thirty (30) days) and had never seen the document before either.  (Def.'s App. at 6.)

Also in the file was a letter dated July 24 and date-stamped July 26 from opposing counsel advising that he had taken a default judgment.  (Def.'s App. at 52.)  When Soster asked why the letter was not dealt with upon receipt, Plaintiff responded that she did not address the letter or bring it or the issue of the default judgment to Soster's attention because she assumed Soster would have handled it, since Soster handled all litigation matters.  (Def.'s App. at 51-52.)  The evidence suggests that Plaintiff refused to take responsibility for her failure to bring to Soster's attention either the letter or the fact that there was a default judgment, and in fact blamed (and continues to blame) Soster for mishandling the default judgment.  (Def.'s Reply App. at 9, 11.)

On October 15, Plaintiff was terminated by Soster over this incident.  Jackson was not fired.  (Pl.'s App. at 4.)

Both Jackson and co-worker Rivera testify that Soster called Plaintiff a "black bitch."  (Pl.'s App. at 4, 9.)  Soster also told Rivera that, with regard to Plaintiff taking time off from work after the funeral of a co-worker, Plaintiff's "black ass was milking it."  (Pl.'s App. at 9.) Jackson testified that he observed Soster treating minority claimants differently that white claimants - she was more demanding and rude with minorities.  (Pl.'s App. at 5.)

## DISCUSSION

To survive a summary judgment motion on her Title VII and § 1981 race-based termination or failure-to-promote claims, Plaintiff must establish, by a preponderance of the evidence, a *prima*

*facie* case of intentional discrimination. *See Pegram v. Honeywell*, 361 F.3d 272, 281 (5th Cir. 2004). Where there is no direct evidence of discrimination, a plaintiff can demonstrate race discrimination through circumstantial evidence that gives rise to an inference of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). After the *prima facie* case is made, the defendant must articulate a non-discriminatory reason for its actions. *Id.* If this is done, then the plaintiff must prove that the defendant's proffered reasons are false and are a pretext for discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000).

A plaintiff can also withstand summary judgment if the plaintiff can establish that the defendant's reason for his action is only one of the reasons for his conduct, and another 'motivating factor' is that the plaintiff is a member of a protected class. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). If a plaintiff demonstrates that his race was a motivating factor in the decision to terminate, then the defendant has the burden of proving the same decision would have been made regardless of discriminatory animus. *Id.* If the defendant fails to carry that burden, the plaintiff prevails. *Id.*

Plaintiff's Complaint alleges discrimination based on two incidents - failure to promote and wrongful termination. (Compl. ¶¶ 6-7.) Plaintiff also alleges that the termination constitutes an unlawful retaliation. (Compl. ¶ 8.)

## I.   DEFENDANT'S MOTION TO STRIKE.

Defendant moves to strike numerous statements contained in the declarations submitted by Plaintiff in support of her summary judgment response. Plaintiff did not file a timely response to

Defendant's Motion to Strike.[1]

### A.    Brisco Declaration.

1) *Paragraph 3* - Defendant objects to Plaintiff's allegation that the office had roughly 20 employees at the time of her employment because it is speculative and not based on personal knowledge.  The Court overrules this objection.  Plaintiff was employed by Defendant and worked in the office.   The Court finds she had sufficient personal knowledge to make such a statement.  Defendant also objects on the basis of hearsay to Plaintiff's allegation that she was told by Soster that the company needed to hire someone to take over the files of another.   The Court overrules this objection because the statement is not hearsay under Fed. R. Evid. 801(d)(2)(A), (C), and (D) - admission by party-opponent.

2) *Paragraph 4* - Defendant makes a hearsay objection to Plaintiff's allegation that she was told by Soster that she was being hired as a supervisor trainee and would be assuming certain responsibilities in that position.  The Court overrules this objection because the statement is not hearsay under Fed. R. Evid. 801(d)(2)(A), (C), and (D) - admission by party-opponent.

3) *Paragraph 5* - Defendant argues that the following statements are hearsay, speculative, and conclusory: (a) that Plaintiff discussed with Soster that she was promised certain responsibilities when she was hired and that she wanted to handle litigation files; (b) that she told Soster that "she had worked hard to achieve the status of litigation adjustor" and wished to maintain that status; and (c) that Plaintiff told Soster that there were very few African-Americans litigation adjusters in the field; and (d) Soster's reply, "Are you saying I'm prejudiced?"

---

[1]   Despite prompting by the Court, and assurances that she would be filing a response, Plaintiff's counsel never filed a response.

The Court overrules these objections.  First, the Court finds that these statements are not speculative or conclusory because they describe specific conversations Plaintiff alleges she actually had with Soster.  Second, the statements Plaintiff allegedly made ((a), (b), (c)) are not being used to prove the truth of the matters asserted and are not hearsay.  The statement Soster allegedly made (d) is non-hearsay because it is an admission by a party opponent under Fed. R. Evid. 801(d)(2).

4) _Paragraph 7_ - Defendant objects to the following allegations as hearsay and speculative:  (a) that Defendant hired Cheryl Mitchell, a white female, for the position of Casualty Adjuster/Litigation Support; (b) this position carried with it the responsibility of handling litigation claims and the opportunity to participate in mediation and settlement negotiations; (3) this position was superior to the position of handling pre-trial claims; (4) Plaintiff was more qualified that Mitchell because she had more experience with claims adjustment, more educational achievement, and had been with the company longer than Ms. Mitchell.

The Court overrules these objections.  Nothing in this paragraph constitutes inadmissible hearsay because there are no out of court statements.  The statements are not inadmissible as speculative because Plaintiff worked for Defendant and presumably had personal knowledge of the facts stated herein.

5) _Paragraph 9_ - Defendant objects to the following allegations as speculative, conclusory and hearsay: (a) two employees with less seniority than Plaintiff were permitted to work flex hours (speculative and conclusory); (b) Plaintiff asked Jackson why she was not permitted to work flex hours; (c) Plaintiff's statement to Jackson that she thought Home State was an equal opportunity employer, but she did not believe she was being treated the same as her white counterparts; (d) Jackson's statement that he would have to check with Soster about the flex time

issue; (e) Jackson's statement that he asked Soster if Plaintiff could work flex time and he told Soster that Plaintiff believed she was not being treated the same as the white employees; (f) Jackson's statement that Soster said that Plaintiff could not work flex time; and (g) Jackson's observation that Soster appeared visibly upset about the accusation that Plaintiff was not being treated equally.

The Court overrules these objections. Sentence (a) is not speculative and conclusory. Plaintiff was an employee of Defendant and was in a position to have personal knowledge of the facts stated therein. Statement (b) is not hearsay because it is not a statement being used to prove the truth of the matter asserted. Statement (c) is not being used to prove the truth of the matter asserted. Statements (d), (e), (f), and (g) are corroborated in Jackson's declaration at Paragraph 5. Statements (d), (e), and (f), which are contained in Paragraph 5 of Jackson's declaration, are not being used as statements to prove the truth of the matter asserted but rather to demonstrate that Jackson discussed the flex time issue with Soster, explained Plaintiff's concerns about discriminatory treatment, and that Soster denied the request for flex time. Sentence (g) does not describe a statement and is proper under Fed. R. Evid. 701.

Defendant also objects to Plaintiff's statement in Paragraph 9 concerning her flex-time complaint because it allegedly conflicts with her deposition testimony in which she testified that she never complained to management that she felt she was being treated differently because of her race. (Pl.'s App. at 3; Def.'s App. at 28.) Because the same statements are admissible from Jackson, the Court will allow the statements from Plaintiff.

6) *Paragraph 10* - Defendant objects to the following allegations as speculative, conclusory and contradictory to Plaintiff's sworn deposition testimony: (a) that Soster's treatment of Plaintiff changed after the flex-time complaint was made; (b) that Soster was short, unfriendly,

8

and harsh in her tone with Plaintiff and that Soster increased Plaintiff's workload, but would not allow her to seek assistance from other employees, including Rivera. Defendant's objection is overruled

First, these statements are not speculative or conclusory. Plaintiff is in a position to have personal knowledge of these facts. Defendant also argues that these facts are not admissible because they contradict Plaintiff's deposition testimony that the only retaliation she experienced was her termination. The Court finds that Plaintiff's declaration testimony that she was treated negatively by Soster does not necessarily contradict her statement that the only retaliation she experienced was her termination. Plaintiff's retaliation claim is not based on rude treatment or increased workload. Rather, the only retaliatory conduct Plaintiff complains of is her termination. Finally, Plaintiff's statements are proper under Fed. R. Evid. 701 because they are relevant and rationally based on Plaintiff's perceptions. Defendant's objection is overruled.

7) *Paragraph 12* - Defendant argues that Plaintiff's allegation in Paragraph 12 that she had not been criticized in her work performance is contradicted by her deposition testimony and other evidence. The Court agrees, sustains this objection, and strikes the statement from the record.

8) *Paragraph 13* - Defendant objects to Plaintiff's allegations that the default was the "responsibility of Soster and not me" and that Soster knows the reason she gave for firing Plaintiff was false, because these statements are not based on personal knowledge, are speculative, and are conclusory. The Court disagrees and overrules the objection under Fed. R. Evid. 701. Plaintiff's statements are relevant and rationally based on Plaintiff's perception of Soster's and Plaintiff's roles in the company.

9) *Paragraph 15* - Defendant moves to strike Plaintiff's allegation that her duties were

replaced by Irtha Pridemore, a non-African American, as speculative and not based on personal knowledge.  Plaintiff has not given any basis for knowing this fact and therefore, Defendant's objection is sustained.

### B.    Jackson Declaration.

1) *Paragraph 3* - Defendant objects to Jackson's testimony that Jackson observed Soster treating minority claimants differently that white claimants and that she was more demanding and rude with minorities.  Defendant contends that these statements are conclusory and speculative and should be excluded under Rule 403.  The Court finds these statements are neither speculative nor conclusory because they are based on Jackson's personal observations and opinion.  Furthermore, these statements are probative of pretext and a mixed motive and there is no danger of unfair prejudice, jury confusion, or misleading of the jury.  Defendant's objection is overruled.

2) *Paragraph 4* - Defendant objects to Jackson's testimony that Soster used the term "black bitch" to describe Plaintiff because it is hearsay, irrelevant, and should be excluded under Rule 403.  First, the statement is not irrelevant because it was allegedly made in reference to Plaintiff.  Second, it is probative of pretext and a mixed motive and there is no danger of unfair prejudice, jury confusion, or misleading of the jury.  Finally, it is not hearsay because it is an admission by a party opponent under Fed. R. Evid. 801(d)(2).

3) *Paragraph 5* - These statements are discussed *supra*.

4) *Paragraph 7* - Defendant objects to Jackson's testimony that "[a]ny document dealing with litigation, including a default judgment, would have been given to Ms. Soster or Ms. Mitchell and not Deloris" because it is not based on personal knowledge and is speculative.  Defendant's objection is overruled.  Jackson was a co-worker who held a supervisory position and

10

was in a position to have personal knowledge of these facts.  The statement is not speculative because it describes what would have happened in a usual case under normal procedures, not in this particular case.  Furthermore, these statements are admissible under Fed. R. Evid. 701 because they are relevant and rationally based on Jackson's perception of the employees' roles in the company.

5) *Paragraph 9* - Defendant objects to Jackson's opinion testimony that the reason Soster did not like Plaintiff was because she complained to Jackson and because she was a African-American.  Defendant argues that this statement assumes facts not in evidence (that Soster disliked Plaintiff and that Plaintiff complained).  Both Plaintiff and Jackson state in their declarations that Plaintiff complained about flex time and for the reasons stated *supra*, those allegations are admissible.  Rivera testified that Soster did not like Plaintiff and for reasons stated *infra*, that statement is admissible.  Therefore, these facts are in evidence and Defendant's objection is overruled.

**C.    Rivera Declaration.**

1) *Paragraph 5* - Defendant objects to Rivera's testimony that Soster told Rivera that Plaintiff would be taking over litigation files and that Plaintiff had extensive litigation experience. The Court overrules Defendant's objection because the statements are admissible under Fed. R. Evid. 801(d)(2) - admission by party-opponent.

2) *Paragraph 10* - Defendant objects to Rivera's testimony that Soster stated, with regard to Plaintiff taking time off from work after the funeral of a co-worker, that Plaintiff's "black ass was milking it."  Defendant objects on the basis of hearsay, relevancy, and Rule 403.  First, the statement is not irrelevant because it was allegedly made in reference to Plaintiff and is probative of pretext and a mixed motive.  Second, there is no danger of unfair prejudice, jury confusion, or

11

misleading the jury.  Third, it is not hearsay because it is an admission by a party opponent under Fed. R. Evid. 801(d)(2).  Defendant's objection is overruled.

       3) *Paragraph 12* - Defendant objects to Rivera's testimony that when Rivera commented to Soster that Plaintiff appeared overwhelmed and asked if she could help Plaintiff, Soster replied "so she's overwhelmed?  Well, I don't feel sorry for that black bitch."  Defendant objects on the basis of hearsay, relevancy, and Rule 403.  First, the statement is not irrelevant because it was allegedly made in reference to Plaintiff and is probative of pretext and a mixed motive.  Second, there is no danger of unfair prejudice, jury confusion, or misleading the jury.  Third, it is not hearsay because it is an admission by a party opponent under Fed. R. Evid. 801(d)(2).  Defendant's objection is overruled.

       4) *Paragraph 13* - Defendant objects to Rivera's testimony that in her opinion, Soster did not like Deloris or black people in general.  Defendant argues this statement is conclusory, speculative, not based on personal knowledge, and objectionable under Rule 403.  Rivera was a co-worker of both Soster and Plaintiff and was in a position to have an admissible opinion on Soster's feelings toward Plaintiff.  Further, the testimony is probative of pretext and a mixed motive and there is no danger of unfair prejudice, jury confusion, or misleading a jury.  Defendant's objection is overruled.

## II.    DISCRIMINATION CLAIMS.

### A.    Exhaustion of Administrative Remedies.

Defendant argues at length that certain of Plaintiff's allegations (*e.g.*, denial of office key, denial of flex time, supervisory training) are not actionable because they are not contained in Plaintiff's EEOC charge(s).  (Mot. at 8-11.)  Because Plaintiff does not appear to base her

discrimination claims on those acts, the Court finds these arguments to be moot.  Also moot for the same reason is Defendant's argument that these acts do not constitute adverse employment actions. (Mot. at 12-13.)  Plaintiff's discrimination claims are limited to failure to promote and wrongful termination.

**B.    Failure to Promote.**

**1.    *Timeliness of EEOC Charge.***

Defendant argues that Plaintiff's failure to promote claim is barred by her failure to timely file a discrimination charge on this basis within 180 days of the event.  (Mot. at 11-12.) Defendant contends that the failure to promote occurred between August 2000 and November 2000 (citing to Plaintiff's deposition) and that the discrimination charge was not filed until October 2001.  Plaintiff does not respond to this argument.

In her deposition, Plaintiff contends that she was hired in August 2000 and, beginning in November of 2000, Plaintiff began to realize she was not handling the duties she believed she was promised.  (Def.'s App. at 4.)  Although Plaintiff contends it was not until May 16, 2001 that she was denied the promotion, the documentary evidence indicates that Mitchell was hired in the adjustor position at issue on November 13, 2000.  (Pl.'s App. at 7, Def.'s App. at 47a, 48, 49). Because Plaintiff's charge was filed nearly one year after the position was filled by Mitchell, on October 16, 2001, Plaintiff's claim is time-barred.

**2.    *Prima Facie Case.***

Even if Plaintiff's failure to promote claim was not time barred, she cannot satisfy the elements of a *prima facie* case.  To establish a *prima facie* case of race discrimination, a plaintiff must establish (1) that she was a member of a protected class; (2) that she was qualified for the

position; (3) that she suffered an adverse employment action; and (4) that others similarly situated were more favorably treated.  In the failure to promote context, a plaintiff must prove that: (1) she belongs to a protected group under Title VII; (2) she applied for and was qualified for the position she sought; (3) she was not promoted to the position sought; and (4) her employer promoted an employee to the position sought who was not a member of the protected class.  *See Monteverde v. New Orleans Fire Dep't*, No. 04-30777, 2005 WL 673490, at *3 (5th Cir. Mar. 23, 2005); *Durkin v. United States Postal Serv.*, 54 Fed. Appx. 794, at *1 (5th Cir. 2002).

Defendant argues that Plaintiff cannot establish a *prima facie* case of discrimination because she cannot demonstrate that she was treated less favorably than a similarly-situated employee. Defendant argues that because Mitchell made less money than Plaintiff, Plaintiff cannot establish she was treated less favorably.  (Def.'s Mot. at 13-14.)

First, the cases cited by Defendant in support of its legal argument that Plaintiff must demonstrate that she was treated less favorably than a similarly-situated employee deal with "improper discipline" or "work rule violation" situations in which two employees of different races or genders are disciplined differently for the same conduct.  *See Monteverde*, 2005 WL 673490, at *3; *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232-34 (10th Cir. 2000); *Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 863-64 (7th Cir. 1997); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995); *Caro v. City of Dallas*, 17 F. Supp. 2d 618, 625 (N.D. Tex. 1998).  We do not have one of those cases here.  Rather, Plaintiff pleads a claim of failure to promote based on race discrimination.

The undisputed evidence indicates that the position of Casualty Adjustor would not have been a promotion for Plaintiff.  Mitchell earned less money in the position of Casualty Adjuster than

Plaintiff did in her position as a Senior Claims Representative.  (Def.'s App.  at 49.)  Plaintiff offers

no evidence that the position involved a change in duties or compensation that can objectively be

characterized as a promotion.  *See Pegram v.  Honeywell, Inc.,* 361 F.3d 272, 284 (5th Cir.  2004).

Plaintiff offers nothing more than her subjective opinion that the position of Casualty Adjuster

constituted a promotion.  Plaintiff's inability to demonstrate that the failure to promote constituted

an adverse employment action entitles Defendant to summary judgment.[2]

For the reasons stated herein, Defendant's motion to dismiss Plaintiff's failure to promote

claim is hereby GRANTED.

### C.    Wrongful Termination.

A *prima facie* case of race discrimination based on termination consists of four elements: (1)

the employee is a member of a protected class; (2) she was qualified for the position; (3) she suffered

an adverse employment action; and (4) she was replaced by an individual of a different race or

otherwise discharged because of her race.  *See Johnson v. Federal Express Corp.*, 4:02-CV-1043-Y,

2005 WL 608167, at *6 (N.D. Tex. Mar. 16, 2005) (Means, J.) (citing *McDonnell Douglas*, 411 U.S.

at 802).   Once a *prima facie* case is established, a presumption of discrimination arises.  *See*

*Monteverde*, 2005 WL 673490, at *3.   After the *prima facie* case has been established, the burden

shifts to the employer to articulate some legitimate, non-discriminatory reason for the termination.

*See id.*  As this burden is one of production, not persuasion, "the employer need not prove that it was

actually motivated by its proffered reason."   *Id.*   Yet, if the employer meets its burden, "the

---

[2]  Even if Plaintiff could demonstrate that the position would have been a promotion, the evidence is
unclear as to whether Plaintiff even applied for the position.  There is nothing in the record indicating that Plaintiff
applied for a position on or about May 2001 - the date on which the refusal to promote allegedly occurred.  (*See* Pl.'s
App.  at 7; Def.'s App. at 47a.)

presumption of discrimination created by the plaintiff's *prima facie* case falls away." *Id.* The burden

of persuasion then shifts back to the plaintiff to demonstrate that the employer's articulated reason

was merely a pretext for unlawful discrimination. *See id.* The court's factual inquiry then becomes

more specific. *See id.* To avoid dismissal by summary judgment at this stage, the plaintiff must

show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but

was merely a pretext for discrimination. *See id.* "In short, the question for us at the pretext stage

is whether a rational trier of fact could find that Defendant discriminated against Plaintiff on the

basis of race." *Id.*

### 1. *Legitimate, Non-discriminatory Reason for Termination.*

Defendant does not challenge Plaintiff's ability to prove a *prima facie* case of discrimination.

However, Defendant does argue that it had a legitimate non-discriminatory reason for firing Plaintiff.

Soster contends that Plaintiff was terminated because she mishandled a default judgment and failed

to accept responsibility for this "gross error." (Def.'s Mot. at 14; (Def.'s App. at 60; Reply App. at

11.) Defendant contends that "Plaintiff's disorganization, or worse, decision to ignore this default

judgment as a Senior Claims Representative with around ten years of experience is astounding."

(Def.'s Mot. at 15.)

### 2. *Pretext.*

Because Defendant has proffered a non-discriminatory reason for Plaintiff's termination, the

burden now shifts to Plaintiff to demonstrate that Defendant's reason is merely a pretext for

discrimination.

On October 11, 2001, Plaintiff found a claims file on her desk with a default judgment inside

dated July 24, 2001. (Pl.'s App. at 3; Def.'s App. at 50.) Plaintiff had not seen the default judgment

document in the file prior to this date.  (Pl.'s App. at 3.)  According to company policy, any litigation document including a default judgment, went directly to Soster.  Plaintiff took the file directly to Jackson, her supervisor, who immediately took the file to Soster.  (Pl.'s App. at 3.)  Jackson regularly reviewed Plaintiff's files (every thirty (30) days) and had never seen the document before either.  (Def.'s App. at 6.)

Also in the file was a letter dated July 24 and date-stamped July 26 from opposing counsel advising that he took a default judgment.  (Def.'s App. at 52.)  When Soster asked why the letter was not dealt with upon receipt, Plaintiff responded that she did not bring the letter or the default judgment to Soster's attention because she assumed Soster would have handled it, since Soster handled all litigation matters and presumably receives all correspondence relating to litigation matters.  (Def.'s App. at 51-52.)  The evidence suggests that Plaintiff refused to take responsibility for her failure to bring the letter or the issue of the default judgment to Soster's attention, and in fact blamed (and continues to blame) Soster for the default judgment.  (Def.'s Reply App. at 9, 11.)

Defendant contends that Plaintiff was terminated over this incident and Plaintiff does not dispute these underlying facts.  Therefore, Plaintiff has not demonstrated that Defendant's proffered reason for her termination is false and a pretext for discrimination.

Plaintiff can also withstand summary judgment if she can establish that Defendant's reason for terminating her was only one of the reasons for the firing, and that another 'motivating factor' for the firing was Plaintiff's race.  *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

### 3.    *Mixed-Motives Analysis.*

When trying to determine whether Plaintiff has raised a fact issue on whether race was a

motivating factor for her termination, the Court looks to the circumstantial evidence presented in this case.   First, Plaintiff has introduced evidence of oral statements that support her claim of race discrimination.   The value of such remarks is dependent upon the content of the remarks and the speaker.   *See Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 225 (5th Cir. 2000).   The remarks at issue in this case are certainly appropriate additional circumstantial evidence of age discrimination because their content indicates race animus and that the speaker (Soster) was primarily responsible for Plaintiff's termination.   The jury could find the repeated use of "black bitch" in reference to Plaintiff and in the presence of more than one witness indicates that Soster had discriminatory animus and motivation.

Plaintiff also submits evidence that Soster said that Plaintiff's "black ass was milking" the death of a co-worker and that Soster "did not feel sorry for that black bitch" when she was overwhelmed with work.   (Pl.'s App. at 9.)   These comments are not simply innocuous comments that could be interpreted as racist; they are plainly derogatory on their face.   Further, they are directed against Plaintiff personally, which indicates that Soster harbored a racial animus against Plaintiff herself.   Third, Soster does not deny making these comments.   The Court concludes that a reasonable jury could find that these comments evidence race-based discrimination against Plaintiff.

Defendant argues, without any citations to the record, that the termination occurred six months after the alleged comments were made and therefore, the comments were "stray remarks" that are insufficient to establish a *prima facie* case of discrimination or to raise a fact issue on pretext.   First, Plaintiff does not need these comments to establish her *prima facie* case and the Court does not consider these comments when analyzing the issue of pretext.   *See supra.*   However, these remarks are appropriately used as circumstantial evidence of whether race was a motivating factor

for Plaintiff's termination.  Moreover, even if these comments were made six months prior to the termination, the Court finds this sufficiently proximate in time to be probative.

Defendant also argues that because Soster was the person who both hired and fired Plaintiff, the "same actor" inference applies, thereby requiring dismissal of Plaintiff's claim.  The "same actor" inference arises when the individual who allegedly discriminated against the plaintiff was the same individual who hired the plaintiff and gives rise to an inference that discrimination was not the motive behind plaintiff's termination.  *See Russell*, 235 F.3d at 229 n.16.  However, the "same actor" inference does "not rule out the possibility that an individual could prove a case of discrimination." *Id.*

The Fifth Circuit held in *Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 546-47 (5th Cir. 1996) that "[w]hile evidence of such circumstances [same actor hiring and firing] is relevant in determining whether discrimination occurred, we decline to establish a rule that no inference of discrimination could arise under such circumstances.  Instead, we prefer to look at the evidence as a whole, keeping in mind the ultimate issue: Whether [race] was a determinative factor in the employment decision."

There is evidence in this case to support both Plaintiff's and Defendant's position.  Defendant emphasizes the fact that Soster hired Plaintiff knowing she was African-American.  (Def.'s App. at 38.)  Furthermore, Plaintiff lashed out against Defendant with an accusation of discrimination for failure to offer her flex time when there is no evidence that Plaintiff ever requested flex time prior to the accusation.  In fact, Plaintiff's request to work flex time was granted a month or so after she made her request.  (Def.'s App. at 23.)  Additionally, Plaintiff received a $3,000 salary increase from Soster in May of 2001.  Yet Plaintiff provides evidence that Soster made racially derogatory statements about Plaintiff to other employees, that Plaintiff was treated differently from whites on

19

other occasions (*e.g.* with respect to the key), and that Soster treated minorities, including blacks, worse than she treated whites. And there is little, if any, documentation in the record rebutting Plaintiff's evidence. Soster's alleged attitude concerning Plaintiff's race, coupled with the evidence as a whole, could allow a reasonable juror to conclude that race was a motivating factor in Defendant's decision to terminate Plaintiff.

Therefore, for the reasons stated herein, Defendant's motion for summary judgment on Plaintiff's termination claim is hereby DENIED.

## III.    RETALIATION CLAIM.

To state a claim for retaliation, a plaintiff must prove that (1) she engaged in protected activity pursuant to Title VII; (2) she suffered an adverse employment action; and (3) a causal nexus exists between the protected activity and the adverse employment action. *See Arnold v. United States Dep't of Interior*, 213 F.3d 193, 198 (5th Cir. 2000).

Defendant argues that Plaintiff's retaliation claim fails because Plaintiff cannot establish that she engaged in any protected activity before the termination. (Mot. at 22.) Plaintiff responds by arguing that she was retaliated against (terminated) for complaining about discriminatory treatment, including (1) litigation files being handled only by a white employee (Pl.'s App. at 2); (2) white employees only receiving office keys; (3) litigation position being given to less-qualified white employee; and (4) only white employees received flex time (Pl.'s Resp. at 12.) However, the evidence indicates that Plaintiff made only two discrimination-based complaints to a supervisor: (1) concerning white employees receiving flex time and (2) concerning white employees handling litigation files.

With respect to the litigation file complaint, Plaintiff discussed with Soster the fact that Plaintiff was not handling litigation files as she believed she was promised.  Rather, those files were being handled by a temporary white employee with no litigation experience.  (Def.'s App. at 27-28; Pl.'s App. at 2.)  Plaintiff allegedly explained to Soster that she wanted to handle litigation files, as promised when she was hired, and that "she had worked hard to achieve the status of litigation adjustor" and wished to maintain that status.  (Pl.'s App. at 2.)  When Plaintiff explained to Soster that there were very few African-Americans litigation adjusters in the field, Soster allegedly replied, "Are you saying I'm prejudiced?"  (Pl.'s App. at 2.)

With respect to Plaintiff's flex-time complaint, Plaintiff testified that certain white employees were permitted to work flex hours when she was not.  Plaintiff and Jackson state that she asked Jackson, her immediate supervisor, why she was not permitted to work flex hours.  Plaintiff commented that she thought Home State was an equal opportunity employer, but she did not believe she was being treated the same as her white counterparts.  Jackson told Plaintiff he would have to check with Soster about the issue.  He later told Plaintiff that he asked Soster if Plaintiff could work flex time and he mentioned the fact that Plaintiff believed she was not being treated the same as the white employees. According to Jackson, Soster denied Plaintiff's request for flex time and appeared visibly upset about the accusation that Plaintiff was not being treated equally.  (Pl.'s App. at 6.) However, Plaintiff's flex time request was approved shortly after her request was made.  (Def.'s App. at 23.)

Plaintiff testified that Soster's treatment of her changed after this incident. Soster was short, unfriendly, and harsh in her tone with Plaintiff.  (Pl.'s App. at 2.)  She increased Plaintiff's workload, but would not allow her to seek assistance from other employees.  (Pl.'s App. at 2, 9.)  Jackson

testified that he believed Plaintiff's complaint that she was not treated the same as white employees caused Soster to dislike Plaintiff.  (Pl.'s App. at 6.)  Plaintiff was terminated by Soster several months later.

Defendant also argues that Plaintiff cannot show any causal connection because the protected activity and the adverse employment action because the decision maker did not know of any protected activity.  This argument fails because, as stated *supra*, both Jackson and Soster were aware of and involved in the complaints Plaintiff made about flex time and handling litigation files (Soster only).[3]

Because Plaintiff has established a *prima facie* case of retaliation, an inference of retaliation arises and the burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for Plaintiff's termination.  *See Williams v. Taco Bell Corp.*, 46 Fed. Appx. 732, at *5 (5th Cir. 2002).  As stated *supra*, Defendant met its burden by asserting that Plaintiff was terminated for mishandling and refusing to accept responsibility for the default judgment.

The burden now shifts back to Plaintiff to demonstrate that Defendant's proffered justification for her termination is a mere pretext for retaliation.  *See id.*  Again, as stated *supra*, Plaintiff does not dispute the facts underling the proffered reason for the termination and therefore, Plaintiff does not raise a fact issue on the issue of pretext.

However, if retaliation was a motivating factor in Defendant's decision to terminate Plaintiff,

---

[3] Defendant also argues, and Plaintiff does not dispute, that Plaintiff's only claim of alleged retaliation is based on Defendant's act of terminating Plaintiff.  (Reply at 8-9.)  Plaintiff alleges Defendant retaliated against her for complaining about discrimination in flex time and the handling of litigation files.  Contrary to Defendant's argument, the statements contained in Plaintiff's declaration are corroborated by both her deposition testimony and Jackson's testimony.  Plaintiff refers to the litigation file complaint made to Soster in her deposition (Def.'s App. at 27-28) and Jackson recounts in his declaration his discussion with Plaintiff concerning flex time.  (Pl.'s App. at 9.)

Plaintiff's retaliation claim can survive. *See Warren v. Terex Corp.*, 328 F. Supp. 2d 641, 646 (N.D. Miss. 2004) (applying *Desert Palace's* mixed motives analysis to retaliation claim); *Bergen v. Continental Cas. Co.*, 3:04-CV-0428-H, 2005 WL 292426, at *4 (N.D. Tex. Feb. 7, 2005) (same). The evidence suggests that after Plaintiff complained about not receiving flex time, Soster began treating Plaintiff differently and made racially derogatory comments about Plaintiff to others. Jackson also opined that Soster did not like Plaintiff because she complained to Jackson about not receiving flex time. This evidence, coupled with the evidence as a whole, could allow a reasonable juror to conclude that retaliation was a motivating factor in Defendant's decision to terminate Plaintiff. Therefore, Defendant's motion to dismiss Plaintiff's retaliation claim is hereby DENIED.

For the reasons stated herein, Plaintiff's Objections to and Motion to Strike Certain Summary Judgment Evidence is hereby DENIED as MOOT,[4] and Defendant's Objections and Motion to Strike Plaintiff's Summary Judgment Declarations is hereby GRANTED in PART and DENIED in PART; and Defendant's Motion for Summary Judgment is hereby DENIED.

It is SO ORDERED, this 16th day of May 2005.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

---

[4] Because the Court does not rely on any of the evidence to which Plaintiff objects, Plaintiff's objections are hereby DENIED as MOOT.